UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| CLAYTON G. WALKER,<br><br>        Plaintiff,<br><br>vs.<br><br>STEVE BARNETT, Secretary of State; and MARCIA HOLTMAN, Department of Labor,<br><br>        Defendants. | 4:20-CV-04059-KES<br><br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, DENYING DEFENDANTS' MOTION FOR EXTENSION OF TIME, AND DENYING PLAINTIFF'S MOTIONS |

Plaintiff, Clayton G. Walker, filed suit against Steve Barnett, Secretary of State, Marcia Hultman,[1] of the Department of Labor, the United States of America, and Unknown Federal Employees, seeking an injunction under the First, Ninth, and Fourteenth Amendments, and alleging causes of action under the vesting clauses, equal access to justice, and *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Docket 1. The court screened Walker's complaint and allowed only Walker's claims for injunctive relief against Barnett and Hultman to move forward and be served. Docket 19. Barnett and Hultman move to dismiss the complaint. Docket 31. Walker opposes the motion. Docket 39. Walker also filed a motion for form 95

---

[1] Walker named as a defendant "Marcia Holtman." Docket 1. It appears the proper spelling of this defendant's last name is "Hultman." Thus, the court refers to this defendant as "Hultman."

reconsideration (Docket 35), three motions for entry of default (Dockets 37, 45, 47), and motion for liberal construction (Docket 52). Defendants oppose Walker's motions for entry of default and move for an extension of time to file their answer or responsive pleading to Walker's complaint. Docket 41. For the following reasons, the court grants the defendants' motion to dismiss (Docket 31), denies Barnett and Hultman's motion for an extension of time (Docket 41), and denies Walker's outstanding motions (Dockets 35, 37, 45, 47, 52).

## FACTS

Walker filed a complaint against Barnett, Hultman, the United States, and unknown federal employees, alleging violations of his constitutional rights related to the COVID-19 pandemic's effect on his ability to run for United States Senate in South Dakota. Docket 1. The court screened Walker's complaint and allowed his suits for injunctive relief against Barnett and Hultman to move forward. Docket 19 at 9. The screening order directed the Clerk of Courts to send blank summons forms and Marshal Service Forms (Form USM-285) to Walker so that he could serve the defendants. *Id.* The court directed Walker to complete and send the Clerk of Courts separate summons and USM-285 forms for Barnett and Hultman and instructed the Clerk of Court to issue the summonses upon receipt of Walker's completed summonses and USM-285 forms. *Id.* at 9-10.

Walker filled out the summonses and USM-285 forms for Barnett and Hultman and returned them to the Clerk of Courts. *See* Docket 26. The summons for Hultman was addressed to Marcia Holtman, Department of

Labor, 123 W. Missouri Ave., Pierre, South Dakota, 57501. Docket 26 at 1. The USM-285 form instructed the Marshals to serve Marcia Hultman at 123 W. Missouri Ave. in Pierre, South Dakota, 57501. *Id.* at 3. The summons for Barnett was addressed to Steve Barnett, Secretary of State, 500 E. Capitol Ave., Pierre, South Dakota, 57501. *Id.* at 4. The USM-285 form instructed the Marshals to serve Steve Barnett, Secretary of State, at 500 E. Capitol Ave., Pierre, SD, 57105.

The summons for Hultman was served on Sarah Petrik, an executive assistant at the Department of Labor, on May 26, 2020. Docket 29 at 2. The summons for Barnett was served on Bailey Tibbs, an executive assistant for the Secretary of State, on May 26, 2020. Docket 29 at 4. Hultman's and Barnett's answers or other responsive pleadings were due June 16, 2020. *See* Docket 29; Fed. R. Civ. P. 12(a)(1)(A)(i). Hultman and Barnett filed a joint motion to dismiss on June 17, 2020. Docket 31.

Walker's complaint alleges that COVID-19 is an active epidemic in 2020, which can cause death. Docket 1 at 1. He alleges that the Federal Government placed restrictions on gatherings and that to keep the spread of COVID-19 low, South Dakotans must quarantine. *Id.* He states that he started circulating a petition for signatures to be a candidate for United States Senate on January 2, 2020. *Id.* at 2. He alleges that the pandemic will hinder individuals' ability to gain access to information about a campaign or petition because many people are not meeting in person and some people do not have a television, computer, or phone. *Id.* Many South Dakota residents, according to Walker, believe that

3

they will potentially contract COVID-19 and become ill or die if they touch a pen or come into close contact with others. *Id.*

Walker alleges that Barnett did not "act fast enough" when changing deadlines for gathering signatures. *Id.* Walker states that after the first month of COVID-related safety measures, he found it difficult to circulate his petition. *Id.* Walker alleges that because of this difficulty in gathering signatures, he "suffered an injury that slowed him from circulating his petition." *Id.* He states that masks are not sufficiently protective because they only cover the mouth and nose, but the COVID-19 virus can spread through the eyes. *Id.* at 3. He provided an email from Christine Lehrkamp, State Election Coordinator in the Office of the South Dakota Secretary of State, stating that there is no law that allows petitions to be signed electronically. Docket 1-1.

Walker's sole allegation against Hultman and the Department of Labor is that the Department of Labor delayed his care and delayed getting him the treatment he needs. Docket 1 at 2-3. He provides no information on what care he sought or what harm he suffered because of such a delay. *See* Docket 1. He seeks an injunction placing his name on the ballot for United States Senate in the 2020 election. *Id.* at 3.

## DISCUSSION

Courts must construe all pleadings so "as to do justice[.]" Fed. R. Civ. P. 8(e). Pro se filings are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[A] pro se complaint . . . must be held to less stringent standards than formal pleadings

4

drafted by lawyers[.]" *Id.* But "[a]lthough pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (citing *Faretta v. California*, 422 U.S. 806, 834-35 n.46 (1975)).

I. **Barnett and Hultman's Motion to Dismiss**

   A. **Insufficient Service**

The complaint seeks relief from Barnett and Hultman in their official capacities.[2] As a result, Walker is suing a state government. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity . . . should be treated as suits against the State."). Under the Federal Rules of Civil Procedure, a state government may be served by either delivering a copy of the summons and complaint to the state's governor or by serving a copy of the summons and the complaint "in the manner prescribed by that state's law for serving a summons . . . on such a defendant." Fed. R. Civ. P. 4(j)(2). South Dakota state law provides that in suits "against a state officer, employee or agent arising out of his [or her] office, employment or agency, a copy of the summons and complaint shall be mailed, certified mail, . . . to the attorney general[.]" SDCL § 15-6-4(d)(6).

---

[2] Walker does not specify in his complaint whether he is suing Barnett and Hultman in their individual or official capacities. *See* Docket 1. As a result, the court construes his claims as official capacity claims. *See Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989) (finding that Fed. R. Civ. P. 9(a) requires litigants to specify whether they are suing an officer in his or her individual or official capacity, and construing a complaint as alleging only official-capacity claims when a plaintiff failed to do so).

Thus, to serve Barnett and Hultman, Walker must either serve a copy of the summons and complaint on the governor of South Dakota or serve the South Dakota Attorney General by sending him a copy of the summons and complaint by certified mail. Neither the governor or the Attorney General of South Dakota were served. Instead Barnett and Hultman were served at their own offices. Thus, Walker did not properly serve Barnett and Hultman and the court grants Barnett and Hultman's motion to dismiss for improper service.

Walker argues that the secretary of state "is an employee of the governor and in the same building" and as a result he properly served the governor when he served Barnett, the secretary of state. But under the South Dakota Constitution, the secretary of state is an elected executive officer, not an employee of the governor. S.D. Const. art. IV, § 7. Thus, Walker did not properly serve the governor by serving the executive assistant to Barnett. And while Walker is a pro se litigant, that fact does not excuse him from compliance with state and federal procedural law. He is a frequent litigant in the District of South Dakota and has successfully served summons on the Governor of South Dakota in suits against the State of South Dakota in the past. *See Walker v. Shafer*, No. 5:16-CV-05121-JLV (D.S.D.), Docket 11. Thus, the court finds that Walker is not excused from compliance with state and federal law and grants defendants' motion to dismiss for insufficient service.

### B.  Standing

Federal courts are courts of limited jurisdiction and may only exercise power designated under Article III of the constitution and the statutes enacted

by Congress. *Gray v. City of Valley Park*, 567 F.3d 976, 982 (8th Cir, 2009) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). To bring a case in federal court, a litigant must have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing is an "essential and unchanging" requirement for federal jurisdiction. *Id.* To show standing to sue, the party invoking federal jurisdiction bears the burden of establishing three elements. *Id.* First, the party must show injury in fact that is both "concrete and particularized" and "actual or imminent." *Id.* Second, the party must show "a causal connection between the injury and the conduct complained of . . . ." *Id.* Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Id.* at 561 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 43 (1976)).

      1.    Injury in Fact

"Injury in fact is an 'invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' " *Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.*, 342 F.3d 871, 878 (8th Cir. 2003) (quoting *Lujan*, 504 U.S. at 560). Here, liberally construing Walker's complaint, he alleges that he faced delays in gathering signatures for his petition to run for United States Senate because of the COVID-19 pandemic. He alleges that he suffered harm because the deadline for filing Senate candidate petitions was not extended after the COVID-19 pandemic began to affect South Dakota. But he does not allege that he suffered any injury because the deadline was not extended. He does not allege that if not for the deadline,

7

he would have or could have successfully obtained enough signatures to be on the ballot in the 2020 election. Nor does he allege that he did not or could not have obtained enough signatures before the deadline. He only makes vague allegations about how the pandemic slowed his ability to gather signatures and how South Dakotans' fear around gathering in public during COVID-19 might have hindered signature gathering.

In fact, Walker states that he began gathering signatures on January 2, 2020—over two months before South Dakota's first COVID-19 case. Docket 1 at 2. Walker does not allege any facts stating that he did not or could not gather sufficient signatures prior to COVID-19 measures taking effect. He does not allege that any other candidates faced struggles gathering signatures due to the deadline for petitions not being extended. Walker fails to show that he suffered any concrete and particularized injury that is actual or imminent related to the petition deadline. While Walker argues that the threat to suffer injury from COVID-19 is not hypothetical, he does not provide facts that connect the threat of injury from COVID-19 to his failure to gain access to the 2020 ballot.

As to Hultman, Walker simply alleges that the Department of Labor delayed his care and delayed getting him necessary treatment. Docket 1 at 2. Walker does not allege that such a delay caused him any injury. Thus, he does not show that he suffered concrete and particularized injury related to Hultman's actions.

### 2. Causation

Second, even if Walker showed that he suffered concrete and particularized injury, he has not shown that such an injury is causally connected to Barnett's alleged failure to change the deadlines for filing petitions, as is required to show standing. *Lujan*, 504 U.S. at 560. He does not allege that a shorter period to gather signatures caused him to be unable to gain access to the ballot, rather than a lack of interested voters, his age, or other factors. He also does not allege that if the deadline were extended, he could have gathered enough signatures. In fact, COVID-19 continues to impact life in South Dakota to the present, and the state continues to see increases in case numbers daily—many greater than those seen in June 2020 when Walker filed his complaint. *See, e.g.,* Joe Sneve, *South Dakota adds nearly 400 COVID-19 cases, one death Thursday*, Sioux Falls Argus Leader (Sept. 17, 2020), https://www.argusleader.com/story/news/2020/09/17/coronavirus-south-dakota-state-adds-nearly-400-covid-19-cases/3480310001/. Because Walker does not show that he would have been better equipped to gather signatures and could have made it onto the ballot with an extension of time, he cannot show that a failure to provide such an extension caused him any harm.

As to Hultman, Walker gives no specifics around her actions that would have led to an alleged injury to Walker. Thus, he cannot show that her actions caused him any harm.

### 3. Redressability

9

Finally, to establish standing, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43). Walker seeks an injunction placing him on the ballot for United States Senate in the 2020 election. Such an injunction would redress the alleged injury of being unable to gain enough signatures due to Barnett's failure to extend the deadline for petitions. But because Walker does not show that he suffered such an injury, or that such an injury was caused by Barnett's actions, this alone does not show that Walker has standing to sue Barnett in federal court. As to Hultman, Walker does not show how an injunction placing him on the ballot would remedy any alleged injury caused by a delay in care. Thus, Walker does not have standing to sue under Article III of the U.S. Constitution and this court does not have jurisdiction over his claim. The court grants Barnett and Hultman's motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## II.     Motions for Default Judgment

Walker moves for default judgment against Barnett and Hultman. Dockets 37, 45, 47. Rule 55 states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Walker argues that because Barnett and Hultman filed their motion to dismiss on June 17, 2020—one day after the June 16, 2020 deadline—default judgment should be entered. Docket 37 at 1; Docket 45 at 1; Docket 47 at 1.

In response, counsel for Barnett and Hultman states that she mistakenly believed the deadline was June 17, 2020. Docket 41 at 1. Barnett and Hultman argue that default judgment under Rule 55(a) is not an appropriate remedy for a responsive pleading filed one day after the deadline. Docket 41 at 2. Because the summons and complaint were not properly served on Barnett and Hultman in their official capacities by mailing a copy to the Attorney General of South Dakota, the default judgment clock never started running. Thus, the court will not direct the Clerk of Courts to enter default judgment and denies Walker's motions.

Barnett and Hultman move for a one-day extension of time to file their answer. Docket 41. Because Walker did not properly serve the summons and complaint to commence the action, an extension of time to timely file the motion to dismiss is not needed. The court denies as moot Barnett and Hultman's motion to extend time to file their responsive pleading.

### III.   Motion for Liberal Construction

Walker moves for this court to construe his pleadings "without undue emphasis on strict compliance with all procedural requirements and technicalities[.]" Docket 52. The court construes Walker's pleadings, as with all pro se plaintiffs' pleadings, liberally—whether or not he moves for liberal construction. Thus, Walker's motion for liberal construction is denied as moot.

### IV.   Motion for Form 95 Reconsideration

In its screening order, the court dismissed Walker's claims against the United States because the United States had not waived its sovereign immunity as is required for the district court to have jurisdiction over the claim. Docket 19 at 4. Before Walker sues the United States in Federal court, the United States must waive its immunity. *Id.* Congress enacted the Federal Tort Claims Act (FTCA) as a limited waiver of the United States' sovereign immunity from suit. *Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2011). But to sue under the FTCA and obtain waiver of the United States' sovereign immunity, plaintiffs must first present their claims to the appropriate Federal agency for consideration. *Id.*

A Standard Form 95 is one means by which a plaintiff can present claims to a federal agency prior to bringing suit under the FTCA. *See id.* at 798. The court construes Walker's Motion for Form 95 reconsideration as arguing that he is not required to submit a Form 95 to the Federal Government prior to suing under the FTCA. Docket 35. He provides an excerpt from justice.gov that states that the "Standard Form 95 is not required to present a claim under the FTCA, but it is a convenient format for supplying the information necessary to bring an FTCA claim." Docket 35-1. This excerpt, and the relevant case law, mean that while Walker is not required to submit a Standard Form 95, he must submit the information necessary to present a claim under the FTCA to the appropriate agency before filing suit in Federal court. *See Mader*, 654 F.3d 794, 798 ("[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 *or other*

12

*written notification of an incident . . . .*" (emphasis added) (citing 28 C.F.R. § 14.2(a)). While Walker is not required to submit a Standard Form 95, he must follow procedures under the FTCA and present his claims to the appropriate agency prior to bring suit in Federal court. Because Walker has not shown that he has done so, his motion for Form 95 reconsideration is denied.

## CONCLUSION

Walker fails to show that he has standing to sue under Article III. He also fails to show that he properly served Barnett and Hultman under the Federal Rules of Civil Procedure and South Dakota law. Thus, it is ordered:

1. Barnett and Hultman's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(5) (Docket 31) is granted.

2. Walker's Motions for Clerk's Entry of Default (Dockets 37, 45, 47) are denied.

3. Walker's Motion for Form 95 Reconsideration (Docket 35) is denied.

4. Barnett and Hultman's Motion for Extension of Time (Docket 41) is denied as moot.

5. Walker's Motion for Liberal Construction (Docket 52) is denied.

Dated September 22, 2020.

                          BY THE COURT:

                          /s/ *Karen E. Schreier*
                          KAREN E. SCHREIER
                          UNITED STATES DISTRICT JUDGE